# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **RODRICK JACKSON,**<br>*Plaintiff* | § § § | |
| **-v-** | § § | |
| **CITY OF HEARNE, TEXAS, JOHN**<br>**NARON, PEE WEE DRAKE, RUBEN**<br>**GOMEZ, EMMETT AGUIRRE,**<br>**MARGARET SALVAGGIO, BRYAN F.**<br>**RUSSJR., THOMAS WILLIAMS,**<br>**STEPHEN YOHNER, PATRICIA**<br>**MENDOZA, STEPHANIE**<br>**RODRIGUEZ, PAT ARMSTRONG,**<br>**HAZEL EMBRA, JOYCE RATTLER,**<br>*Defendants* | § § § § § § § § § § § § | **W-18-CV-00015-ADA** |

## ORDER DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE

Came on for consideration Defendants' Joint Motion to Dismiss Third Amended Complaint (ECF No. 78), Defendant Rodriguez's Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 92), and Plaintiff's Third Amended Complaint (ECF No. 77). The Court has also considered all the replies, responses, and objections the Parties have filed related to the aforementioned motions and pleadings. After consideration, the Court hereby **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 78 & 92). The Court also **DISMISSES WITH PREJUDICE** Plaintiff's claims.[1]

---

[1] In this Order, the Court incorporates and uses portions of the Magistrate Judge's Report and Recommendation which this Court declined to adopt. ECF No. 86. This Court declined to adopt the report because the report failed to determine whether Defendants are entitled to qualified immunity, an issue the Fifth Circuit has held should "'be resolved at the earliest possible stage in litigation.'" *Randle v. Lockwood*, 666 F. App'x 333, 336 (5th Cir. 2016) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). Instead, the Magistrate Judge focused his analysis on Federal Rule of Civil Procedure 12(b)(6). Despite that fact, this Court has been able to incorporate certain portions of the Magistrate Judge's analysis into its qualified immunity discussion.

## PROCEDURAL HISTORY

Plaintiff Rodrick Jackson initiated this suit on January 18, 2018, against the City of Hearne, Hearne City Manager John Naron, former Hearne City Manager Lloyd Drake, Hearne Mayor Ruben Gomez, Hearne City Councilmembers Emmett Aguirre and Margaret Salvaggio, former Hearne City Attorney Bryan F. Russ, Jr., Hearne Police Chief Thomas Williams, former Hearne Police Sergeant Stephen Yohner, former Municipal Court Clerk Patricia Mendoza, citizen Stephanie Rodriguez, and Hearne City Attorney Pro Tem Tangerlia Taylor-Felton. Pl.'s Orig. Compl. ¶¶ 4–15, ECF No. 1. Concurrently with his Original Complaint, he moved for a temporary restraining order and a preliminary injunction, both of which were denied.

Upon being served, defendant and City Attorney Pro Tem Taylor-Felton moved to dismiss Plaintiff's claims against her, which the Court granted on February 7, 2018. ECF No. 40. The remaining defendants moved to dismiss Plaintiff's claims on April 9, 2018. ECF No. 42. Plaintiff amended his complaint without leave of court on April 27, 2018, mooting the pending motions to dismiss. ECF No. 47. The Amended Complaint incorporated additional allegations from the criminal trial against Plaintiff but featured the same causes of action. *Id.*

The defendants then moved to dismiss the Amended Complaint. ECF Nos. 49 & 50. Plaintiff responded by seeking leave to amend his complaint again, which the Magistrate Judge granted. ECF Nos. 51 & 58. The Clerk's Office then entered Plaintiff's Second Amended Complaint in this matter, which added new facts but alleged the same causes of action. ECF No. 59. Defendants promptly moved to dismiss. ECF Nos. 60 & 61. Plaintiff responded, objected to Defendants' reply, moved for leave to file a surreply, moved for a delay until the parties completed discovery, and, alternatively, moved for leave to again amend his complaint. ECF

Nos. 62–63, 65. Defendants jointly moved to stay discovery until the pending motions were disposed. ECF No. 67.

On October 3, 2018 the Court adopted a recommendation from the Magistrate Judge and dismissed Plaintiff's § 1983 claims against Defendant Stephanie Rodriguez. ECF No. 73. The Court also denied the cross-motions regarding discovery and gave Plaintiff leave to file a new complaint. ECF No. 74. Plaintiff filed the Third Amended Complaint on November 2, 2018, mooting the Motions to Dismiss. ECF No. 77. The defendants named in Plaintiff's current complaint are the City of Hearne, John Naron, Lloyd Drake, Ruben Gomez, Emmett Aguirre, Margaret Salvaggio, Brian F. Russ, Jr., Thomas Williams, Stephen Yohner, Pat Armstrong, Hazel Embra, Stephanie Rodriguez,[2] and Joyce Rattler (collectively "Defendants"). Defendants Hearne, Naron, Drake, Gomez, Aguirre, Salvaggio, Russ, Williams, Yohner, Armstrong, Embra, and Rattler (collectively "Movants") filed a Joint Motion to Dismiss Plaintiff's Third Amended Complaint on November 16, 2018. ECF No. 78. Defendant Rodriguez did not join in Movants' Motion to Dismiss.

On January 25, 2019, Magistrate Judge Manske issued a Report and Recommendation. ECF No. 86. By order dated April 2, 2019, the Court declined to adopt the Report and Recommendation as filed and reviewed the Motion to Dismiss and all related pleadings in a de novo manner. ECF No. 91. Additionally, the Court authorized Defendant Rodriguez to file a motion to dismiss on the remaining § 1985 claims against her, which Defendant Rodriguez did on April 3, 2019. ECF No. 92.

## DISCUSSION

Plaintiff sues Defendants under 42 U.S.C. § 1983 and § 1985 for violations of his First Amendment, equal protection, and due process rights. Pl.'s Third Am. Compl. ¶¶ 55–57, ECF

---

[2] Plaintiff's § 1985 claims remain against Stephanie Rodriguez.

No. 77. Defendants seek dismissal of all Plaintiff's claims against them.[3] To allege a plausible

claim under § 1983, Plaintiff must allege facts demonstrating: (1) a violation of a federal right

(2) committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638

(5th Cir. 2013). To allege a plausible claim under § 1985, Plaintiff must allege facts

demonstrating: (1) a violation of a federal right (2) resulting from an agreed conspiracy (3)

organized to deprive a class of persons a constitutional right and (4) whose member(s) overtly

acted in furtherance of the conspiracy. *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 378

(5th Cir. 2017).

Both § 1983 and § 1985 require a violation of a constitutional right and do not allow for

suit when the acts of the defendants are otherwise legal. *Id.* at 379. Further, § 1983 and § 1985

require direct acts by the defendants (under § 1985 by one conspiracy member) against the

plaintiff—neither authorizes respondeat superior liability. *Triplett v. LeBlanc*, 642 F. App'x 457,

461 (5th Cir. 2016). Plaintiff alleges the violated constitutional rights underlying his § 1983

---

[3] Plaintiff disputes that the Joint Motion to Dismiss challenges his § 1985 claims. Pl.'s Obj. at 1–2, ECF No. 81. Specifically, he argues "Defendants argued and cited cases in favor of dismissing the Plaintiff's 42 U.S.C. § 1985 claim *for the first time* [in their reply.]" *Id.* at 1. Plaintiff is correct § 1985 is never mentioned by name in the Joint Motion. However, Defendants cite applicable precedent while arguing for dismissal of Plaintiff's § 1985 conspiracy claim. *E.g.* Defs.' Third Mot. Dismiss at 5, ECF No. 78 ("[t]o prove the existence of a conspiracy under [§ 1985], the plaintiff must allege and establish facts showing a meeting of the minds.") (quoting *Garrison v. City of Texarkana*, 910 F. Supp. 1196, 1207 (E.D. Tex. 1995)). The Joint Motion is also not subtle about the case-dispositive relief Defendants seek: "the Movants jointly move that the Plaintiff's action against them be in all things DISMISSED." Defs.' Third Mot. Dismiss at 25, ECF No. 78 (emphasis in original). The Joint Motion seeks dismissal of all Plaintiff's actions against them, regardless of whether such actions were delineated by name. *Id.*

The Court notes that Plaintiff references a previous order issued by this Court in which the Court adopted the Magistrate Judge's Report and Recommendation and dismissed Plaintiff's § 1983 claims against Defendant Rodriguez. ECF No. 73. In that order, this Court wrote "that Defendant Rodriguez failed to specifically address Plaintiff's 42 U.S.C. § 1985 claims in her Motion to Dismiss." *Id.* The Court further stated, "[T]his Court will not sua sponte address the issue that Defendant Rodriguez failed to raise in her Motion to Dismiss." *Id.* Plaintiff cites this language in support of his argument that the Court should not "sua sponte" dismiss all his § 1985 claims against all Defendants. Pl.'s Obj. Mag. R&R at 4–5, ECF No. 88. First, as discussed within this footnote, the Court finds Defendants have adequately addressed Plaintiff's conspiracy allegations against them, even if they did not specifically mention "42 U.S.C. § 1985" in their Joint Motion. Second, in its earlier order, the Court was only addressing claims against Defendant Rodriguez. It was not yet addressing Plaintiff's remaining claims against all Defendants. The Court was loath to consider Plaintiff's conspiracy issues against one Defendant individually without first considering the underlying liability of all Defendants. Therefore, the Court will now address Plaintiff's §1985 claims against all Defendants. To the extent that this Order disagrees with its language in its previous order, this Order controls.

claims are his rights to free speech, equal protection, and due process. Pl.'s Third Am. Compl. ¶¶ 55–57, ECF No. 77. He alleges his § 1985 claims are actionable through the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶ 56.

This Order will have two primary sections. First, the Court will consider whether any Defendants are entitled to qualified immunity. Second, the Court will consider whether Plaintiff's claims against the remaining Defendants are subject to dismissal for failure to state a claim under Rule 12(b)(6) and for statute of limitations violations.

## I.     Qualified Immunity

Plaintiff alleges Defendants violated his rights protected by the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment. As set forth below, Defendants Thomas Williams, Stephen Yohner, Pat Armstrong, John Naron, Ruben Gomez, Emmett Aguirre, and Margaret Salvaggio are all entitled to qualified immunity for the claims against them.

### a. Legal Standard

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley*, 726 F.3d at 638 (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)) (emphasis added). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Additionally, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged

conduct." *Id.* "A court has discretion to decide which prong to consider first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Generally, when considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* at 648. "Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2nd Cir. 2004).

### b. Analysis

#### 1. Defendant Officers

In this case, Plaintiff makes several allegations against Defendant Thomas Williams, the City of Hearne's police chief, Defendant Stephen Yohner, a former police sergeant for the City of Hearne, and Defendant Pat Armstrong, a police lieutenant for the City of Hearne (collectively "Defendant Officers"). Each Defendant Officer is entitled to qualified immunity; therefore, Plaintiff's claims against them should be dismissed. The facts giving rise to Plaintiff's claims against Defendant Officers are set forth below.

All Plaintiff's claims are based on his underlying allegation that the City of Hearne has become quite corrupt. Pl.'s Third Am. Compl. ¶¶ 17–18, ECF No. 77. According to Plaintiff, this

corruption stems from the "'Booger County Mafia,'"[4] an alleged group of conspirators made up of "white and Hispanic officials" who "ran local government in the City of Hearne and Robertson County for their own personal benefit, with no consideration for black residents." *Id.* ¶ 17. Plaintiff, a resident of Hearne who "had grown tired of the corruption in city and county government," decided to act. *Id.* ¶ 18. He began requesting city records through the Texas Public Information Act and then publicizing his findings. *Id.* He also ran for and obtained a seat on Hearne's city council. *Id.* ¶ 22. While on the city council, Plaintiff allegedly had public conflicts with other members of the council, the interim city manager Defendant Naron, and the mayor Defendant Gomez. *Id.*

In 2016, Defendant Rodriguez, a local resident and mother, was living with her teenage daughter ("Female Minor"). *Id.* ¶ 23. Plaintiff claims that Defendant Rodriguez "evicted" her daughter, who left home and began staying with Plaintiff. *Id.* Plaintiff had allegedly been long-time friends with Defendant Rodriguez and Female Minor. *Id.* After living several weeks at Plaintiff's home, Female Minor left and told people that Plaintiff sexually molested her. *Id.* ¶¶ 24–25. Plaintiff alleges that Female Minor made this claim because she no longer wanted to live with Plaintiff. *Id.* ¶ 24. Instead, she wanted to move back in with her mother. *Id.*

The Hearne Police Department was soon notified of Female Minor's allegations against Plaintiff. *Id.* ¶ 25. A caseworker interviewed Female Minor; however, Plaintiff was never questioned about the allegations of sexual molestation. *Id.* ¶ 25. Plaintiff then alleges that Defendant Yohner was summoned to a "special meeting" with Defendant Russ, Hearne's former city attorney, and Defendant Rodriguez, Female Minor's mother. *Id.* ¶ 26. Plaintiff alleges that Defendants Russ and Rodriguez used that meeting to "demand criminal charges against the Plaintiff." *Id.*

---

[4] The Court will refer to this group as the "alleged conspiracy" for the remainder of the Order.

The allegations against Plaintiff were soon referred to the Robertson County District Attorney, who rejected the case. *Id.* ¶ 27. After the district attorney rejected the case, the Hearne Police Department gave Plaintiff a Class C misdemeanor assault citation based on Female Minor's allegations. *Id.* ¶ 28. Plaintiff claims Defendant Williams informed him that the City issued the citation because of "'pressure from the family,'" which Plaintiff interprets to mean pressure from Defendant Rodriguez. *Id.* ¶ 29. Plaintiff claims Defendants Williams and Armstrong were the officers who made the final decision to initiate the criminal charge, although Defendant Yohner was the one who issued the Class C misdemeanor citation. *Id.* ¶ 34. Although the police issued the citation, a special prosecutor employed by the City of Hearne prosecuted the case. *Id.* ¶ 37.

Based on these allegations, Plaintiff sues Defendant Officers under § 1983 and § 1985 for violating his equal protection rights by allegedly enforcing and prosecuting the law selectively and in bad faith against him. *Id.* ¶ 11, 56. Additionally, Plaintiff sues Defendant Officers under § 1983 for violating his First Amendment rights. *Id.* ¶ 55.

### A. Equal Protection

The Court will first analyze whether Defendant Officers are entitled to qualified immunity for Plaintiff's equal protection claims against them.

### i. Violation of a Federal Right

At the outset, the Court finds Plaintiff fails to sufficiently plead an equal protection violation. "'[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right.'" *Curtis v. Sowell*, 761 F. App'x 302, 306 (5th Cir. 2019) (quoting *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th

Cir. 2000)). It is necessary when asserting an equal protection claim for a plaintiff to demonstrate that "similarly situated individuals were treated differently." *Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003) (quoting *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)).

In this case, Plaintiff fails to allege disparate treatment of similarly situated individuals. While Plaintiff requests a broad comparison—he argues he should be compared to all individuals accused of serious crimes but not prosecuted by the District Attorney[5]—the analysis is quite specific based on "all relevant factors[:]"

> [t]he goal of identifying a similarly situated class of law breakers is to isolate the factor allegedly subject to impermissible discrimination . . . . If all other things are equal, the prosecution of only those persons to whom the factor applies . . . gives rise to an inference of discrimination. But where the comparison group has less in common with defendant, then other factors . . . may very well play a part in the prosecution.

*United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) (quoting *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989)). Individuals are similarly-situated when "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.*

In Plaintiff's case, he—a sitting city councilmember—was charged with misdemeanor assault in 2015 after a victim said that he sexually molested her. Pl.'s Third Am. Compl. ¶¶ 21– 29, ECF No. 77. The examples the Third Amended Complaint provides for juxtaposition include: (1) a city councilmember not charged in 1997 after killing another individual with a vehicle "shortly after" that individual physically "beat" the city councilman; (2) the mother of Female Minor never being charged or referred to CPS / the District Attorney after Female Minor accused her mother of assaulting her; (3) Defendant Yohner not being indicted by a grand jury after committing unspecified "sexual misconduct[;]" (4) an individual named John Gonzales not being

---

[5] Pl.'s Resp. Mot. Dismiss at 14, ECF No. 79.

charged with Class C misdemeanor assault after the Police Department charged but could not

indict him with indecency with a child in 2016; (5) Defendant Williams and Yohner not being

charged with a Class C misdemeanor after a grand jury refused to indict them for destroying

evidence or violating drug laws; and (6) another non-defendant officer Stephen Stem who was

not charged with a Class C misdemeanor after a grand jury rejected charges against him. *Id.*

Only one of the examples dealt with a city councilmember accused of misconduct while

in office; however, it involved a mutual altercation at a bar two decades prior. *Id.* ¶ 17.

Alternatively, two examples involve sex crimes, but one was unspecified sexual misconduct and

the other was indecency with a child by a "John Gonzales" under unknown conditions. *Id.* ¶¶ 43–

47. While the Third Amended Complaint certainly alleges a great deal of potential wrongdoers

are escaping prosecution, the Constitution does not require city officials to prosecute all

lawbreakers:

> [s]elective prosecution has two meanings in law. The first is simply failing to
> prosecute all known lawbreakers, whether because of ineptitude or (more
> commonly) because of lack of adequate resources. The resulting pattern of
> nonenforcement may be random, or an effort may be made to get the most bang
> for the prosecutorial buck by concentrating on the most newsworthy lawbreakers,
> but in either case the result is that people who are equally guilty of crimes or other
> violations receive unequal treatment, with some being punished and others getting
> off scot-free. That form of selective prosecution, although it involves dramatically
> unequal legal treatment, has no standing in equal protection law.

*Parude v. City of Natchez*, 72 F. App'x 102, 105 (5th Cir. 2003) (quoting *Esmail v. Macrane*, 53

F.3d 176, 178–79 (7th Cir. 1995)) (parenthetical and brackets in original). Given the

distinguishing or unknown factors, the above examples of non-prosecution are not similarly-

situated to Plaintiff. *Williams*, 275 F. App'x at 390. Because Plaintiff fails to plead disparate

treatment among similarly-situated individuals, his equal protection claims brought under § 1983

and § 1985 fail. Therefore, Defendant Officers are entitled to qualified immunity.

### ii. Clearly Established

Although unnecessary based on the Court's decision that Plaintiff fails to plead an equal protection violation against Defendant Officers, the Court will also discuss the second prong of the qualified immunity analysis. As aforementioned, the second prong in the analysis is whether the federal right at issue was clearly established. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320–21 (5th Cir. 2018), *cert. denied sub nom.*, 139 S.Ct. 1211 (2019).

To determine whether a right was clearly established, the Court must evaluate whether Defendant Officers' conduct was proscribed by clearly established law at the time of the incident. *Id.* "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Shumpert*, 905 F.3d at 320 (quoting *Morgan*, 659 F.3d at 371–72). When determining what constitutes clearly established law, the Court will look first to Supreme Court precedent, then to the Fifth Circuit. *Id.*

"'To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Taylor v. Barkes*, ––– U.S. –––, 135 S.Ct. 2042, 2044 (2015)). The ultimate touchstone is "fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions have reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (citations and quotations omitted). Finally, the Court must "not define clearly established at a high level of generality." *Ashcroft*, 563 U.S. at 742. "To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Shumpert*, 905 F.3d at 321 (emphasis in original) (quotations omitted).

In this case, Plaintiff has not demonstrated that Defendant Officers violated clearly established law at the time of the challenged conduct. Boiled down, Plaintiff complains that Defendant Officers issued a Class C misdemeanor citation to Plaintiff after a teenage girl stated publicly that Plaintiff sexually molested her. The Court remains unconvinced that Defendant Officers violated Plaintiff's clearly established rights despite Plaintiff's additional allegations that Defendant Officers were acting in retaliation and at the behest of other Defendants when they issued the citation. This remains true despite Defendant Officers issuing the citation after the Robertson County District Attorney Coty Siegert rejected the case.

Again, according to Plaintiff's own pleadings, a teenage girl cried out that Plaintiff, a member of Hearne's city council, sexually molested her. Based on these specific circumstances, the Court is unconvinced that every reasonable officer would have believed he violated Plaintiff's rights by issuing him a citation.[6] *Shumpert*, 905 F.3d at 320 (citing *Taylor*, 135 S.Ct. at 2044). Importantly, Plaintiff fails to point to any authoritative caselaw that would have provided fair warning to Defendant Officers that their conduct was violating Plaintiff's clearly established rights under these circumstances. *Shumpert*, 905 F.3d at 320 (quoting *Morgan*, 659 F.3d at 371–72). Therefore, Plaintiff's equal protection claims do the meet the second prong of the analysis, and Defendant Officers are entitled to qualified immunity for Plaintiff's § 1983 and § 1985 claims against them.

### B. First Amendment

Plaintiff also asserts First Amendment retaliation claims against Defendant Officers. For the reasons set forth below, Defendant Officers are entitled to qualified immunity on these claims.

---

[6] As discussed above, Plaintiff fails to allege a violation of his equal protection rights.

12

###### i.    Violation of a Federal Right

The Court finds Plaintiff fails to sufficiently allege that Defendant Officers violated his rights under the First Amendment. A First Amendment retaliation claim requires three elements: (1) a constitutionally-protected activity; (2) an adverse action against the plaintiff which would chill a person of ordinary firmness from continuing to engage in that activity; and, (3) the adverse action was substantially motivated against the exercise of the constitutionally-protected activity. *Culbertson v. Lykos*, 790 F.3d 608, 618 (5th Cir. 2015). The Constitution protects criticism of government officials, *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017), and Plaintiff's anti-corruption campaign against Movants fits this description. Pl.'s Third Am. Compl. ¶¶ 18, 20–22, ECF No. 77. Retaliatory prosecution ultimately resulting in an exoneration would "chill" a reasonable individual. *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002). Movants dispute the third element—whether the Complaint adequately alleges that the adverse action flowed from Movants.

The causation element is among the most difficult to allege and prove for a § 1983 plaintiff. *Hartman v. Moore*, 547 U.S. 250, 262 (2006). The plaintiff must allege a connection between "the retaliatory animus of one person and the action of another." *Id.* at 263. The allegations must indicate the prosecutor would not act against the plaintiff but for the "induce[ment]" of the angered government official. *Id.* The allegations must also overcome "the longstanding presumption of regularity accorded to prosecutorial decisionmaking." *Id.* A complaint ordinarily must bridge the gap between animus and action by "alleg[ing] and show[ing]" "the absence of probable cause[.]" *Id.*; *see also Reichle v. Howards*, 566 U.S. 658, 666 (2012) ("a plaintiff cannot state a claim of retaliatory prosecution in violation of the First

Amendment if the charges were supported by probable cause.").[7] Thus, the Third Amended Complaint must allege that Defendant Officers induced the alleged retaliatory prosecution and that probable cause did not support prosecution of Plaintiff. *Hartman*, 547 U.S. at 262.

The Fifth Circuit's decision in *Travis v. City of Grand Prairie*, is particularly instructive. 654 F. App'x 161, 165 (5th Cir. 2016). There, the plaintiff reported two individuals to a state agency for welfare fraud and sexual assault of a minor. *Id.* at 162. The next day, the individuals contacted a sheriff's department and reported the plaintiff sexually assaulted one of them. *Id.* The sheriffs interviewed the plaintiff, concluded the report was not credible, and declined to arrest him. *Id.* The individuals then contacted a nearby police department and made the same report. *Id.* The new police department interviewed the plaintiff, checked his story with the sheriff's department, and then arrested him and charged him with sexual assault. *Id.* The charges were eventually dropped against the plaintiff, and the plaintiff sued the police department for retaliatory arrest and prosecution. *Id.*

The Fifth Circuit held the victim's report of sexual assault was "alone . . . sufficient to give . . . probable cause[.]" *Id.* at 165. The court held, absent allegations indicating the police knew the witness' account was "demonstrably false[,]" that the police had probable cause for an arrest. *Id.* The court further rejected the allegation that the police department needed to respect the sheriff's department's prior determination regarding the victim's credibility, noting "no

---

[7] Plaintiff claims the Third Amended Complaint does not need to make factual allegations supporting the absence of probable cause. Pl.'s Notice Ct., ECF No. 82. While this might be true for retaliatory arrest claims, probable cause is required in retaliatory prosecution claims to bridge the causal gap between the animus of city leaders and the discretionary acts of a prosecutor. *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 1953 (2018) ("in retaliatory prosecution cases, the causal connection between the defendant's animus and the prosecutor's decision to prosecute is weakened by the presumption of regularity accorded to prosecutorial decisionmaking."). The recent *Lozman* decision, as raised by Plaintiff in a supplemental communication to the Court, did not abrogate this rule for prosecutions. *Farmer v. Decker*, 353 F. Supp. 3d 342, 352 n.9 (M.D. Pa. 2018). The use of a special prosecutor does not negate the probable cause requirement either. *Brown v. Lyford*, 243 F.3d 185, 189–91 (5th Cir. 2001) (holding malicious prosecution, false arrest, unreasonable seizure, and false imprisonment require no probable cause and applying the requirement to a suit against, among others, prosecutor pro tem Roland Lyford).

authority" supported the idea. *Id.* The court then affirmed the district court's dismissal of the plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). *Id.*

Here, Plaintiff's Third Amended Complaint alleges that Female Minor "told people that the Plaintiff had sexually molested her[]" and "reported her allegations to the Hearne Police."[8] Pl.'s Third Am. Compl., ¶¶ 25–26, ECF. No. 77. Plaintiff further alleges that a district attorney previously rejected the case, Female Minor lied, and law enforcement needed to interview Plaintiff. *Id.* ¶¶ 25–29. However, as in *Travis*, a single victim's report of sexual molestation provides enough probable cause to defeat a retaliatory prosecution claim. 654 F. App'x at 165. Even assuming the district attorney previously rejected the case, the Female Minor lied, or that an interview with Plaintiff would reveal additional facts, probable cause remained effective for a new prosecutor to bring charges against Plaintiff. *Id.* "While the Government may have [] illegitimate reasons for prosecuting someone who lobbied against its policies, the plaintiff [must] allege and show a lack of legitimate reasons to prove retaliatory behavior on the Government's part." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 583 (5th Cir. 2008). Given probable cause is alleged, the Third Amended Complaint does not state a plausible claim for retaliatory prosecution. *Id.* Accordingly, Defendant Officers are entitled to qualified immunity.

### ii.    Clearly Established

Plaintiff also fails the second prong of the qualified immunity analysis. Similar to its equal protection analysis above, the Court finds Plaintiff has not demonstrated Defendant Officers violated clearly established law when they issued the citation. As discussed above, for a right to be clearly established, the right must be sufficiently clear that every reasonable officer would have understood he is violating the law by what he is doing. *Shumpert*, 905 F.3d at 320 (quoting *Taylor*, 135 S.Ct. at 2044).

---

[8] It specifically identifies Defendant Yohner as the responding officer.

In this case, there was an outcry from a minor that Plaintiff sexually molested her. An outcry from a victim is enough to establish probable cause. *Travis*, 654 F. App'x at 165. The Court is unconvinced that every reasonable officer would have known that issuing a citation (based on a minor's outcry) to Plaintiff would violate his rights. Plaintiff has also given no authority to this Court that would have provided fair warning to Defendant Officers that their conduct was violating Plaintiff's clearly established rights under these circumstances.[9] *See Shumpert*, 905 F.3d at 320 ("[W]e must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.") (quoting *Morgan* 659 F.3d at 371–72). Based on the foregoing, the Court finds Plaintiff fails to meet the second prong of the qualified immunity analysis for his First Amendment retaliation claims. Therefore, Defendant Officers are entitled to qualified immunity.

## 2. Defendant Leaders

The Court now turns to Plaintiff's claims against Defendants Emmett Aguirre and Margaret Salvaggio, current members of the Hearne City Council, and Defendant Ruben Gomez, mayor of the City of Hearne (collectively "Defendant Leaders"). Each of these defendants are entitled to qualified immunity; therefore, the claims against them should be dismissed. The events giving rise to Plaintiff's claims against them are set forth below.

As previously discussed, Plaintiff had an assortment of public issues with members of Hearne's local government. The primary basis for Plaintiff's claims against Defendant Leaders is that they approved funding for the special prosecutor to prosecute the misdemeanor claim against Plaintiff. *Id.* ¶ 29. Plaintiff claims that Defendants Aguirre, Salvaggio, and Gomez's financial approval was wrong because they approved the funding despite allegedly knowing the charges

---

[9] Indeed, Defendant Officers did not violate Plaintiff's First Amendment rights.

against Plaintiff were retaliatory. *Id.* ¶¶ 29, 32. Plaintiff also claims that Defendant Leaders enforced the law selectively against Plaintiff by failing to prevent the police from bringing the Class C misdemeanor charge against Plaintiff. *Id.* ¶ 36.

Plaintiff brings § 1983 and § 1985 against Defendant Leaders for allegedly violating his equal protection rights. *Id.* ¶¶ 7–9, 56. Similarly, Plaintiff brings § 1983 against Defendant Leaders for violating his First Amendment rights. *Id.* ¶ 55

### A. Equal Protection

For the reasons discussed below, Defendant Leaders are entitled to qualified immunity for Plaintiff's equal protection claims against them.

#### i. Violation of a Federal Right

In this case, the Court finds Plaintiff fails to sufficiently plead a violation of his federally protected rights. Again, the basis for Plaintiff's equal protection claim against Defendant Leaders is that they approved funding for the special prosecutor. *Id.* ¶ 29. Additionally, Plaintiff alleges Defendant Leaders are liable because they failed to prevent the police from issuing the Class C misdemeanor to Plaintiff. *Id.* ¶ 36.

Plaintiff's equal protection claims against Defendant Leaders fail for the same reasons his equal protection claims fail against Defendant Officers. As discussed above, when asserting an equal protection claim, a plaintiff must demonstrate that similarly situated individuals were treated differently. *Beeler*, 328 F.3d at 816. Plaintiff fails to sufficiently allege disparate treatment of similarly situated individuals; therefore, he fails to allege a violation of a federally protected right.[10] For a more complete discussion of Plaintiff's equal protection claims, see the

---

[10] The Court notes that even if Plaintiff had sufficiently pleaded disparate treatment of similarly situated individuals, it is still unlikely that Plaintiff alleges enough to state a supervisory liability claim against Defendant Leaders for an equal protection violation. However, based on the Court's determination that Plaintiff fails to allege a violation, the Court does not reach the issue of supervisory liability.

Court's qualified immunity analysis for Plaintiff's equal protection claims against Defendant Officers.

### ii. Clearly Established

Not only do Plaintiff's claims under the Equal Protection Clause fail the first prong of the qualified immunity analysis, but Plaintiff's claims also fail the clearly established prong. The basis for Plaintiff's claims against Defendant Leaders is that they approved funding for a special prosecutor to prosecute the misdemeanor claim against Plaintiff. Pl.'s Third Am. Compl. ¶ 29, ECF No. 77. Again, Plaintiff was issued the misdemeanor citation based on Female Minor's outcry that he had sexually molested her. *Id.* ¶¶ 25–28. Furthermore, Plaintiff claims that Defendant Leaders are liable for failing to *prevent* the police from bringing the misdemeanor charge against him. *Id.* ¶ 36.

As discussed above, Defendant Officers had probable clause to issue a misdemeanor citation to Plaintiff. The Court cannot conclude that every reasonable councilmember and mayor would have understood that he is violating the law by approving funding for a special prosecutor to prosecute a citation based on probable cause.[11] *Shumpert*, 905 F.3d at 320 (quoting *Taylor*, 135 S.Ct. at 2044). Similarly, the Court will not hold Defendant Leaders liable for failing to prevent Defendant Officers from bringing misdemeanor charges, based on probable cause, against Plaintiff. Plaintiff failed to provide the Court with authority that would require it to conclude otherwise. *See Shumpert*, 905 F.3d at 320 (quoting *Morgan* 659 F.3d at 371–72). Accordingly, the Court finds Plaintiff fails to meet the second prong of the qualified immunity analysis for his equal protection claims against Defendant Leaders. Therefore, Defendant Leaders are entitled to qualified immunity for Plaintiff's § 1983 and § 1985 claims against them.

---

[11] Indeed, the Court finds that Defendant Leaders did not violate the law by approving funding or failing to prevent the citation's issuance.

## A. First Amendment

Defendant Leaders are also entitled to qualified immunity for Plaintiff's First Amendment retaliation claims for the reasons set forth below.

### i. Violation of a Federal Right

Plaintiff alleges that Defendants Aguirre, Salvaggio, and Gomez can be held liable for retaliatory prosecution because they "approved funding for a special prosecutor as a way to retaliate against their political enemy . . . ." *Id.* ¶ 29. As already discussed, the Court determined that the presence of probable cause was mortal to Plaintiff's claims for retaliatory prosecution against Defendant Officers. If the underlying prosecution was not retaliatory, then it would be incongruous for Defendant Leaders to be liable for approving a special prosecutor's funding for a non-retaliatory case. Therefore, the Court finds Plaintiff fails to allege Defendant Leaders violated his federally protected rights when they approved funding for a special prosecutor. Thus, Plaintiff fails the first prong of the qualified immunity analysis.

### ii. Clearly Established

Plaintiff also fails the second prong of the qualified immunity analysis. In this case, the Court is unconvinced that every reasonable councilmember and mayor would have known that approving funding for a special prosecutor would violate Plaintiff's First Amendment rights.[12] *Shumpert*, 905 F.3d at 320 (quoting *Taylor*, 135 S.Ct. at 2044). As already discussed at great length in this Order, there was probable cause to prosecute Plaintiff for his alleged sexual misconduct with a minor. Additionally, it is reasonable for a special prosecutor to be paid for his work, and Defendant Leaders were reasonable when they approved the payment for the prosecutor. Furthermore, Plaintiff failed to provide the Court with any authority that proscribes councilmembers or mayors from providing funding for a special prosecutor who has probable

---

[12] Again, Plaintiff fails to allege a violation of his First Amendment rights.

19

cause to prosecute a criminal defendant. *Id.* (quoting *Morgan*, 659 F.3d at 371–72). Therefore, the Court finds Plaintiff fails to meet the clearly established prong of the qualified immunity analysis, and Defendant Leaders are entitled to qualified immunity for Plaintiff's First Amendment retaliation claims against them.

### 3. Defendant Naron

Plaintiff also brings claims against Defendant John Naron, the current city manager for the City of Hearne. Because Defendant Naron is entitled to qualified immunity, Plaintiff's claims against him fail. The facts giving rise to Plaintiff's claims against Defendant Naron are as follows.

Defendant Naron was hired as the interim city manager for the City of Hearne after Defendant Drake (discussed later in this Order) retired. Pl.'s Third Am. Compl. ¶ 22, ECF No. 77. Plaintiff alleges that, similar to many of the other Defendants, Plaintiff had political conflicts with Defendant Naron. *Id.* Plaintiff further alleges that Defendant Naron was motivated to retaliate against Plaintiff because of his political disagreements with Plaintiff. *Id.* ¶¶ 22, 29. After the Robertson County District Attorney rejected the criminal case against Plaintiff for the sexual molestation of Female Minor, Plaintiff alleges that Defendant Naron was the first to authorize funding for a special prosecutor to pursue the misdemeanor charge against Plaintiff. *Id.* ¶ 29. Additionally, Plaintiff alleges that Defendant Naron did so without consulting the city council, although the city council later ratified his decision to fund the prosecutor. *Id.*

Municipal Judge Tommy Starns was initially the judge presiding over the misdemeanor criminal case. *Id.* ¶ 30. During the pendency of the action, Judge Starns admitted to receiving letters from the City of Hearne through an ex parte communication with his court clerk. *Id.* The letters explained that information pertaining to a suspension of Defendant Yohner was

unavailable until the Texas Attorney General issued a ruling regarding the release of that information to the public. *Id.* At Plaintiff's request, Judge Starns recused himself from the case because of his ex parte communications. *Id.* Plaintiff alleges that it was Defendant Naron who made Judge Starns' court clerk give him the ex parte information. *Id.* ¶ 31. Plaintiff claims that Defendant Naron did so (1) to protect Defendant Yohner from the embarrassment of having his personnel file released and (2) to deny Plaintiff access to evidence needed to defend himself. *Id.*

Furthermore, Plaintiff alleges that Defendant Naron encouraged Defendant Officers to enforce the law selectively and initiate the misdemeanor prosecution against Plaintiff. *Id.* ¶ 36. Plaintiff also alleges that Defendant Naron did not prevent the "bad faith prosecution" because it served his own purpose of retaliating against Plaintiff. *Id.*

Based on the above allegations, Plaintiff brings § 1983 and § 1985 against Defendant Naron for violating his equal protection rights, First Amendment rights, and due process rights.

### A. Equal Protection

For the reasons discussed below, the Court finds Defendant Naron is entitled to qualified immunity for the equal protection claims against him.

#### i. Violation of a Federal Right

Plaintiff's equal protection claims appear to be based on two primary incidents. First, Plaintiff claims Defendant Naron violated the Equal Protection Clause by approving the funding for a special prosecutor who prosecuted Plaintiff for the misdemeanor. Pl.'s Third Am. Compl. ¶ 29, ECF No. 77. Second, Plaintiff claims Defendant Naron violated his equal protection rights by encouraging Defendant Officers to issue the misdemeanor citation. *Id.* ¶ 36.

Plaintiff's equal protection claims fail for the same reasons they fail in the prior sections of this Order. Again, when asserting an equal protection claim, a Plaintiff must demonstrate that

similarly situated individuals were treated differently. *Beeler*, 328 F.3d at 816. Plaintiff fails to sufficiently allege disparate treatment of similarly situated individuals; therefore, he also fails to allege a violation of a federally protected right. Because he fails to allege a violation of a federally protected right, Defendant Naron is entitled to qualified immunity for Plaintiffs equal protection claims against him. For additional analysis of Plaintiff's equal protection claims, see the Court's qualified immunity discussion for Plaintiff's equal protection claims against Defendant Officers.

### ii.    Clearly Established

As an additional, independent reason for granting Defendant Naron qualified immunity, the Court also considered the clearly established prong. After review, the Court finds Plaintiff's claims against Defendant Naron fail the second prong of the qualified immunity analysis.

Again, Female Minor cried out that Plaintiff had sexually molested her. Pl. Third. Am. Compl. ¶ 25, ECF No. 77. Defendant Officers had probable cause to issue a citation to Plaintiff based on Female Minor's claims. It is the city manager's job to help allocate city funds. Thus, it is up to the city manager to help provide funding for a special prosecutor to prosecute cases arising from probable cause. Defendant Naron did just that, and despite Plaintiff's antagonistic history with Defendant Naron, the Court cannot conclude that every reasonable city manager would have declined to encourage Defendant Officers or provide funding for a special prosecutor under these circumstances. *Shumpert*, 905 F.3d at 320 (quoting *Taylor*, 135 S.Ct. at 2044). Furthermore, Plaintiff has not provided any controlling authority to the Court that would require this Court to decide otherwise. *Id.* (quoting *Morgan*, 659 F.3d at 371–72). Thus, Plaintiff cannot meet the clearly established prong of the qualified immunity analysis. Because Plaintiff fails

each prong, the Court finds Defendant Naron is entitled to qualified immunity for Plaintiff's equal protection claims against him.

### B. First Amendment

Defendant Naron is also entitled to qualified immunity for any First Amendment retaliation claims Plaintiff brings against him.

### i. Violation of a Federal Right

Plaintiff fails to properly allege that Defendant Naron violated his First Amendment rights. Like his equal protection claims, Plaintiff's retaliation claims against Defendant Naron are couched on his allegedly retaliatory motivation in approving the special prosecutor's funding. Pl.'s Third Am. Compl. ¶ 29, ECF No. 77. Plaintiff further alleges that Defendant Naron retaliated against Plaintiff by encouraging Defendant Officers to issue a misdemeanor citation to Plaintiff. *Id.* ¶ 36.

As noted repeatedly in the prior sections of this Order, Defendant Officers' issuance of the misdemeanor citation and the resulting prosecution did not violate Plaintiff's First Amendment rights because the citation and prosecution were based on probable cause. It logically follows that if the underlying prosecution did not violate Plaintiff's rights, then Defendant Naron cannot have violated Plaintiff's First Amendment rights by funding the special prosecutor. Similarly, encouraging a lawful prosecution did not violate Plaintiff's rights in this case. Therefore, the Court finds Plaintiff fails to allege that Defendant Naron violated his First Amendment rights. Based on the Court's determination, Plaintiff fails the first prong of the qualified immunity analysis and Defendant Naron is entitled to qualified immunity.

### ii. Clearly Established

Again, the Court has considered the second prong of the qualified immunity analysis and finds Plaintiff fails to meet the clearly established prong for his First Amendment claims against Defendant Naron. The Court is unconvinced that all reasonable city managers would have declined to provide funding or encouragement for a special prosecutor who was prosecuting the misdemeanor citation against Plaintiff. *Shumpert*, 905 F.3d at 320 (quoting *Taylor*, 135 S.Ct. at 2044). Again, Plaintiff failed to provide any authority to this Court that would require it to decide otherwise. *Id.* (quoting *Morgan*, 659 F.3d at 371–72). Therefore, the Court finds Plaintiff fails step-two of the qualified immunity analysis, and Defendant Naron is entitled to qualified immunity for Plaintiff's First Amendment claims against him.

### C. Due Process

Plaintiff further claims that Defendant Naron denied him due process of law when he allegedly told Judge Starns' clerk to provide letters to the judge in an ex parte manner. Again, a plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (citations and quotations omitted). After consideration, the Court finds Plaintiff fails to properly allege that Defendant Naron violated Plaintiff's due process rights for the reasons listed below.

While the Third Amended Complaint does not delineate the specific basis of the alleged due process violation, Plaintiff's Response states his claim is premised on alleged ex parte contacts violating his right to a fair trial. *E.g.* Pl.'s Resp. Mot. Dismiss at 19, ECF No. 79 ("the Plaintiff properly stated a due process claim insofar as . . . the Defendants communicated ex

parte with Judge Starns.") (citing *Wooley*, 534 F.3d at 494).[13] However, "[a]fter extensive research, [the undersigned] could locate no Fifth Circuit case that found ex parte 'contacts' to constitute a reversible violation of due process." *Crowe v. Smith*, 151 F.3d 217, 234 (5th Cir. 1998). To the contrary, the undersigned's research reveals an "extensive tradition of affording little or no weight to isolated ex parte contacts[.]" *Id.* at 235, 234 n.24 (listing cases). Neither party provided a case to the contrary.[14]

The courts that disregard ex parte contacts generally conclude such communications are "de minimis and harmless[.]" *Crowe*, 151 F.3d at 235. "[F]or there to be a due process violation[,] . . . the defendant's right to a fair trial must be impaired." *Hernandez v. Terrones*, 397 F. App'x 954, 970 (5th Cir. 2010) (discussed in context of suggestive identification procedures never used at trial). Thus, to the courts considering ex parte communications, due process allows for occasional or isolated communications so long as they do not affect the court or jury's judgment. *Crowe*, 151 F.3d at 235. Otherwise, if an ex parte contact jeopardizes the potential fairness of rulings, a judge must recuse him- or herself so the defendant may still obtain a fair trial. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877–78 (2009).

Plaintiff alleges facts supporting an ex parte communication—the judge presiding over Plaintiff's criminal trial admitted to obtaining letters from the City of Hearne via his court clerk and did not receive the information from either party during the litigation. Pl.'s Third Am. Compl., ¶¶ 30–32, ECF No. 77. However, Plaintiff further alleges that the judge recused himself in or around May 2017 following the ex parte communications. *Id.* Plaintiff does not allege any

---

[13] In *Wooley* the appellant argued "*ex parte* communication between the court and state-appointed receivers deprived it of its Fourteenth Amendment due process right to a fair trial." 534 F.3d at 494 (emphasis in original).

[14] While Plaintiff provides a Fifth Circuit case to support the notion that ex parte contacts offend Due Process, the panel in that case never actually reached the issue. *See Wooley*, 534 F.3d at 495 n.5 ("We leave it to the Louisiana courts to decide whether the alleged *ex parte* communication . . . may have affected Health Net's due process rights.") (emphasis in original).

facts suggesting the sitting judge's receipt of ex parte communications in or around April 2017 affected Plaintiff's trial in February 2018 before, presumably, a different judge. Ex parte communications amount to a due process violation "only to 'the extent that a fair and just hearing would be thwarted . . . and to that extent only.'" *Young v. Herring*, 938 F.2d 543, 557 (5th Cir. 1991) (discussed in the context of a judge having ex parte communications with a jury) (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985)) (brackets omitted). Plaintiff does not allege facts suggesting such unfairness occurred here.

An ex parte communication with a presiding judge does not de facto violate due process. *Crowe*, 151 F.3d at 234. In this instance, Plaintiff alleges the judge recused himself shortly after the ex parte communication, which suggests the ex parte communication did not affect the fairness of Plaintiff's trial. Pl.'s Third Am. Compl., ¶¶ 30–31, ECF No. 77. Without allegations indicating the ex parte communication affected Plaintiff's right to a fair trial, Plaintiff fails to sufficiently allege a violation of his due process rights.[15]

---

[15] In Plaintiff's Objections to the Magistrate's Report and Recommendation, Plaintiff claims that Judge Starns' recusal delayed his criminal trial date from May 5, 2017, to February 2018. Pl.'s Obj. R&R at 18, ECF No. 88. He then argues that such a delay caused him damages because "justice delayed is indeed justice denied." *Id.* Notably, Plaintiff provided the Court with no authority for his proposition that a delay caused when a presiding judge recuses himself amounts to a due process violation.

The Court also notes that in his Objections, Plaintiff argues, "'due process violations with de minimis damages are constitutionally cognizable claims.'" *Id.* at 18 (quoting *Bowlby v. City of Aberdeen*, 681 F.3d 215, 223–23 (5th Cir. 2012). While that is correct, in this case Plaintiff fails to allege a due process *violation* in the first place. Based on the caselaw this Court has discussed, a due process violation occurs when a judge communicates ex parte only if that communication impacts a defendant's right to a fair trial. Here, Judge Starns recused himself; therefore, Plaintiff's right to a fair trial was not impacted.

In addition to bringing his due process claims for the ex parte communication, Plaintiff claims that Defendant Naron's alleged ex parte communication was retaliatory and violated his rights under the First Amendment. The Court finds Plaintiff's First Amendment retaliation claim based on the ex parte communication fails for reasons similar to why his due process claim fails. Alleged efforts to improperly influence litigation involving the plaintiff are, alone, insufficient to "chill" a reasonable individual. *E.g. Smart v. Holder*, 368 F. App'x 591, 592–93 (5th Cir. 2010) (holding a reasonable individual would not be chilled by an Assistant United States Attorney contacting the individual's supervisor and suggesting the supervisor cut off the individual's access to resources used to prosecute lawsuit). This is particularly true when the alleged efforts are ineffective. *See* Pl.'s Third Am. Compl., ¶ 30, ECF No. 77 (stating the judge with whom Defendants allegedly communicated recused himself shortly thereafter).

Because Plaintiff fails to allege a violation of his due process rights, he fails the first prong of the qualified immunity analysis. Therefore, Defendant Naron is entitled to qualified immunity for Plaintiff's § 1983 due process claim against him.

## II.  Federal Rule of Civil Procedure 12(b)(6)

Plaintiff also brings claims against the City of Hearne, Bryan F. Russ, Lloyd Drake, Hazel Embra, Joyce Rattler, and Stephanie Rodriguez.[16] For the reasons set forth below, Plaintiff's claims fail.

### a.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is both legally cognizable and plausible on its face, but the court should not evaluate the plaintiff's likelihood of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). When the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, then the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (internal citation and quotation marks omitted).

The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. The pleading standard does not require detailed factual allegations, but it does demand greater specificity than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Id.*; FED. R. CIV. P. 8(a)(2). A pleading that offers "labels and conclusions," "naked assertion[s]" devoid of "further factual

---

Therefore, Plaintiff fails to allege a violation of his First Amendment rights based on the ex parte communication, and Defendant Naron is entitled to qualified immunity on this claim.

[16] These Defendants are either not state actors, or they are entitled to dismissal of the claims against them based on the applicable statute of limitations.

enhancement," or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555, 557; *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Evaluating the plausibility of a claim is a context specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 679.

### b. Analysis

#### 1. City of Hearne

In this case, Plaintiff brings § 1983 and § 1985 claims against the City of Hearne for alleged violations of his First Amendment and equal protection rights. Pl.'s Third Am. Compl. ¶¶ 4, 54–57, ECF No. 77. Although not explicitly stated in his Third Amended Complaint, Plaintiff claims the City of Hearne is liable "because its city council was deliberately indifferent to the custom of retaliation and other constitutional violations by city employees and officials." Pl.'s Resp. Mot. Dismiss at 8, ECF No. 79. As support for his claim that Defendant Hearne had a custom of retaliation and corruption, Plaintiff lists numerous "bad actions" committed by the Hearne Police Department.

For example, Defendant Yohner allegedly "routinely took illegal drugs from suspects . . . and put them in his desk, and he did so without logging the illegal drugs into evidence . . . ." Pl.'s Third Am. Compl. ¶ 40, ECF No. 77. Defendant Yohner would allegedly sell these illegal drugs. *Id.* Plaintiff also alleges that Defendant Williams helped Defendant Yohner destroy any evidence of such transactions. *Id.* Additionally, Defendant Yohner allegedly sexually harassed a female police officer, and Defendant Williams did nothing to prevent such harassment. *Id.* ¶ 43. Finally, the Hearne Police Department allegedly had never charged a person with a Class C misdemeanor after the District Attorney had rejected felony charges—Plaintiff's case was the first time that this occurred. *Id.* ¶¶ 41–42. Despite having knowledge of these corrupt acts, city council

members took no action because the "corruption, incompetence and lawlessness in the Hearne Police Department . . . suit[ed] their political purposes." *Id.* ¶ 52.

*Monell v. Department of Social Services of the City of New York* recognized a right of action against a municipality that deprived a person of his constitutional rights. 436 U.S. 658, 690–91 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies."). However, *Monell* also held "a municipality cannot be held liable under § 1983 under a respondeat superior theory." *Id.* at 691. To establish liability under *Monell*, a plaintiff must prove "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Ordinarily a plaintiff must provide written policy statements or regulations to meet this burden, but a plaintiff may also establish municipal culpability through widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)) (internal quotation marks omitted). A plaintiff "must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 582). To establish a pattern, a plaintiff must offer similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005). Further, "[a] pattern

[] requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson*, 588 F.3d at 851 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

As discussed at length in this Order, Plaintiff fails to sufficiently allege a constitutional violation against any Defendant. That fact alone is mortal to Plaintiff's claim against the City of Hearne because without a constitutional violation, Plaintiff cannot establish liability under *Monell*. *Pineda*, 291 F.3d at 328. Therefore, Plaintiff's claims against the City of Hearne should be dismissed.

As an additional, independent reason for dismissal, the Court notes that even if Plaintiff alleged a constitutional violation, he still fails to sufficiently allege a policy or custom of retaliation.[17] Plaintiff admits that this was the first time that the Hearne Police Department had charged a person with a Class C misdemeanor after felony charges were rejected. Pl.'s Third Am. Compl. ¶ 28, ECF No. 77. In fact, not only had this never happened before Plaintiff's case, it has never happened since Plaintiff's case. *Id.* ("Even though Mr. Siegert routinely rejects felony cases brought by the Hearne Police Department, the department had never before (*and has never since*) charged a defendant with a Class C misdemeanor after the district attorney rejected a felony charge.") (emphasis added).

Furthermore, Plaintiff fails to allege other examples of similar instances where the Hearne Police Department selectively prosecuted or selectively enforced the law against other citizens for speaking out against local corruption. Plaintiff's exhaustive history of the alleged violations committed by the Hearne Police Department and other city council members is inconsequential. The Fifth Circuit requires that a plaintiff demonstrate a pattern of *similar incidents* in which citizens were injured—"prior indications cannot simply be for any and all

---

[17] Plaintiff is claiming that Hearne's city council is the municipality's final policymaker. Pl.'s Resp. Mot. Dismiss at 8, ECF No. 79.

'bad' or unwise acts . . . ." *Estate of Davis ex rel. McCully*, 406 F.3d at 383. As such, Plaintiff's

allegations of rampant drug abuse and sexual harassment by the Hearne Police Department are

unimportant because there is little similarity between those acts and the alleged retaliation

against Plaintiff for speaking out against local corruption. Because of the dissimilarity between

the aforementioned acts, the Court cannot conclude that the city council was aware of facts from

which the inference could be drawn that the Hearne Police Department would likely retaliate

against Plaintiff by issuing him a citation. *See Lewis v. Pugh*, 289 F. App'x 767, 771–73 (5th Cir.

2008) (finding no deliberate indifference despite the supervisory official having prior knowledge

of four excessive force and unlawful arrest claims because "there is little similarity between the

allegedly excessive force used to effectuate the arrests . . . and the intentional, violent, rape of

Lewis.").

For the reasons outline above, the Court finds Plaintiff fails to sufficiently allege a claim

against Defendant Hearne. Therefore, Plaintiff's claims against Defendant Hearne should be

dismissed.

### 2. Defendant Russ

Plaintiff brings § 1983 and § 1985 claims against Defendant Russ for allegedly violating

his equal protection and First Amendment rights. For the reasons set forth below, Plaintiff's

claims against Defendant Russ are subject to dismissal.

Defendant Russ is the former city attorney for the City of Hearne. Pl.'s Third Am.

Compl. ¶ 10, ECF No. 77. Plaintiff alleges the following about Defendants Russ and Rodriguez:

> The day after Female Minor reported her allegations to the Hearne Police,
> Defendant Yohner was summoned to the law offices of Defendant Russ, where
> Defendant Russ and Defendant Rodriguez were waiting for him. Defendant
> Rodriguez and Female Minor had already been interviewed by the police on the
> previous evening, and there was no reason to summon Defendant Yohner for a
> special meeting. Other lawyers would not have been able to summon a Hearne

police officer to their offices for such a meeting, but Defendant Russ had special influence in his role as a former city attorney and as a Mafia kingpin. Defendant Rodriguez and Defendant Russ wanted to bring a civil lawsuit against the Plaintiff, so Defendant Russ used his political influence to demand criminal charges against the Plaintiff.

*Id.* ¶ 26. Based on these allegations, Plaintiff brings claims under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id.* ¶¶ 54–56.[18]

First, Plaintiff makes the "naked assertion" that Defendants Russ and Rodriguez wanted to bring a civil lawsuit against Plaintiff. *Twombly*, 550 U.S. at 557. Later in his Third Amended Complaint, Plaintiff even admits that Defendants Russ and Rodriguez never filed a civil lawsuit, although he claims it is because "it became clear at the Plaintiff's criminal trial that a civil case had no chance of succeeding." Pl.'s Third Am. Compl. ¶ 29, ECF No. 77. Plaintiff's statements about Defendants Russ and Rodriguez's motives are simply broad stroke "labels and conclusions" and cannot be the basis for a proper claim against Defendant Russ. *Twombly*, 550 U.S. at 555.

Similarly, Plaintiff merely offers conclusions and conjecture about what occurred at the meeting. He alleges "Defendant Russ used his political influence to demand criminal charges against the Plaintiff." Pl.'s Third Am. Compl. ¶ 26, ECF No. 77. Notably, he fails to offer any factual enhancement to that allegation, such as how a former city attorney could strong-arm the police to issue a citation to Plaintiff. *Twombly*, 550 U.S. at 557. He also fails to offer any facts as to what occurred at the meeting besides his broad claim of coercion. Thus, Plaintiff's allegations against Defendant Russ are nothing more that "naked assertions" and cannot support the constitutional claims Plaintiff brings against him. *Id.*

---

[18] Defendant Russ was a not a state actor at the time of his challenged conduct. Although unclear, Plaintiff appears to assert that Defendant Russ can be liable as a non-state actor under § 1983 and § 1985 because he acted in a conspiracy with state actors. Pl.'s Resp. Mot. Dismiss at 6, ECF No. 79. The Court does not need to reach this issue because even if Plaintiff could assert § 1983 and § 1985 claims against Defendant Russ, he failed to properly do so in this case.

As an additional, independent, reason for its decision, the Court finds that Plaintiff's claims fail because this Court already found the underlying Class C misdemeanor citation to not be unconstitutional. The Court determined that Defendant Officers did not violate federal law by issuing the citation to Plaintiff; therefore, the Court will not hold Defendant Russ liable for allegedly encouraging Defendant Officers to issue a citation

Finally, in Plaintiff's Third Amended Complaint, he attempts to incorporate the Answer, General Denial, Counter-Petition and Cross-Petition of a separate case. Pl.'s Third Am. Compl. ¶ 21, ECF No. 77. He also attempts to incorporate by reference Judge Pitman's order and the Magistrate Judge's report and recommendation from the separate case. *Id.* Plaintiff is apparently endeavoring to bring additional claims against Defendant Russ through these documents. Notably, Plaintiff's Third Amended Complaint fails to discuss how specifically the incorporated documents relate to the present dispute. Rather, all Plaintiff does is state, "As set forth in the foregoing [incorporated] documents, Defendant Russ unlawfully impeded the Plaintiff's efforts to put the initiative on the ballot and to vote on a forensic audit of city finances." *Id.*

It is not this Court's duty to search through pages of incorporated documents to try to find parts that would apply to the current dispute. *See Berthelot v. Boh Brothers Const. Co., L.L.C.*, No. 05-4182, 2006 WL 2256995 at *9 n.20 (E.D. La. July 19, 2006) ("[s]uch arguments and incorporation by reference to pleadings filed in another case is meaningless, unacceptable and contrary to the rules and workings of this Court."). Instead, it is Plaintiff's duty to specifically identify a plausible claim for relief on the face of the Third Amended Complaint. *Ashcroft*, 556 U.S. at 678.[19] Therefore, to the extent Plaintiff attempts to bring in additional, unnamed claims

---

[19] The Court is not saying in this Order that all incorporations are insufficient in all cases. Instead, in this case Plaintiff fails to sufficiently describe how his incorporated documents relate to the present case.

from a previous litigation without discussing them, the undersigned concludes the Third Amended Complaint does not state plausible claims for relief "on its face." *Id.*

### 3. Defendants Drake, Embra, and Rattler

Plaintiff brings § 1983 claims against Defendants Lloyd Drake, Hazel Embra, and Joyce Rattler for violating his First Amendment rights. The Court finds Plaintiff's claims against Defendants Drake, Embra, and Rattler fail because the claims are time-barred based on the applicable statute of limitations.

Defendant Drake is the former city manager for the City of Hearne. Pl.'s Third Am. Compl. ¶ 6, ECF No. 77. Plaintiff alleges that in 2015, Plaintiff began requesting records about Hearne's local government and publishing his findings. *Id.* ¶ 18. Plaintiff claims that on July 21, 2015, he submitted a request for utility billing records. *Id.* The same day he requested those records, Plaintiff alleges Defendant Drake ordered city employees to shut off Plaintiff's electricity in retaliation for his records request. *Id.* Plaintiff alleges that his electricity was not turned back on until the following day. *Id.*

Defendants Embra and Rattler are former councilmembers for the City of Hearne and were in office at the time of Defendant Drake's alleged misconduct. *Id.* ¶¶ 15–16. Plaintiff alleges that Defendants Embra and Rattler merely laughed at him when Plaintiff informed them that Defendant Drake shut off his power. *Id.* ¶ 19. Plaintiff claims they also failed to supervise Defendant Drake's corrupt actions, and indeed kept him employed because he was corrupt and retaliatory. *Id.*

A district court may dismiss a complaint based on statute of limitations if it is clear from the complaint that the claims are time-barred. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). Since § 1983 does not provide a statute of limitations, the statute of limitations for a civil

rights action is determined by state law. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). *Owens* held the statute of limitations for all § 1983 claims is the forum state's "general or residual statute for personal injury actions." 488 U.S. at 250; *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). In Texas, the general personal injury limitations period is two years. *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006); Tex. Civ. Prac. & Rem. Code § 16.003(a).

The Fifth Circuit has held that the limitations period begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski*, 237 F.3d at 576. "The standard in § 1983 actions provides 'that the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Shelby v. City of El Paso*, 577 F. App'x 327, 331 (5th Cir. 2014) (quoting *Burrell*, 883 F.2d at 418).

In this case, Plaintiff alleges that Defendant Drake caused his power to be shut off on July 21, 2015. The Court finds that accrual occurred that very same day, as Plaintiff obviously knew about his alleged injury (that he was without power to his home). Plaintiff did not file the instant suit against Defendant Drake until January 18, 2018, over two years past accrual of Plaintiff's claims against him. Pl.'s Third. Am. Compl., ECF No. 1. Furthermore, Plaintiff did not bring Defendants Embra and Rattler into the lawsuit until April 27, 2018, when he filed his First Amended Complaint. ECF No. 47. Therefore, Plaintiff's First Amendment retaliation claims against Defendants Drake, Embra, and Rattler are barred by the applicable statute of limitations and should be dismissed.[20]

---

[20] The Court further dismisses any § 1985 equal protection conspiracy claims Plaintiff may have brought against Defendants Drake, Embra, and Rattler. First, Plaintiff's conspiracy allegations against Defendants Drake, Embra, and Rattler are conclusory and do not state a plausible claim for relief. *Twombly*, 550 U.S. at 555, 557. Next, the Court already determined that no Defendant violated Plaintiff's civil rights in this case. Thus, these Defendants

### 4. Defendant Rodriguez

The Court dismisses Plaintiff's remaining claims against Defendant Rodriguez. In a previous order, this Court dismissed all Plaintiff's § 1983 claims against Defendant Rodriguez. Order Adopting Mag. R&R, ECF No. 73. Thus, the only remaining claims against Defendant Rodriguez are Plaintiff's § 1985 conspiracy claims against her. Pl.'s Third. Am. Compl. ¶¶ 23–26, ECF No. 77. For Plaintiff to properly assert a § 1985 claim, he must sufficiently allege an underlying violation of his civil rights. *Mitchell*, 265 F. App'x at 371 (citing *Earnest*, 690 F.2d at 1202); *Brown v. City of Grand Prairie*, No. CIV.A. 3:01-CV-0139, 2002 WL 171728, at *8 (N.D. Tex. Jan. 29, 2002) (citing *Kerr v. Lyford*, 171 F.3d 330, 341–42 (5th Cir. 1999)). As already discussed in this Order, Plaintiff fails to sufficiently allege any underlying civil rights violations against any Defendant. Defendant Rodriguez cannot be liable for an alleged conspiracy that failed to violate Plaintiff's rights. Therefore, Plaintiff's § 1985 conspiracy claims against Defendant Rodriguez should be dismissed.

### CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 78 & 92) are **GRANTED**

**IT IS FURTHER ORDERED** that all Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FINALLY ORDERED** that this case is **CLOSED**.

**SIGNED** this 17th day of June, 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

---

cannot be liable for a conspiracy that failed to violate Plaintiff's constitutional rights. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 371 (5th Cir. 2008) (citing *Earnest v. Lowentritt*, 690 F.2d 1198, 1202 (5th Cir.1982)).